pointment of the commissioners of appraisal and no objections as to the validity of said proceedings were made, filed with, or presented to the law committee of the common council, nor to the common council, when the report of the commissioners of appraisal was filed with or under consideration in the common council. The minutes of the condemnation proceedings were put in evidence on the trial, but do not appear in the record, so that we may safely assume that no objection on the part of the owners of the right of way was made to the proceedings on the hearing.

[2] There is no dispute but that the plaintiff acted in good faith in the premises, and we think it would be inequitable and unjust for the city of Rochester through its law department to deprive her of the money due upon the contract of the school board with her by delays such as this record discloses. Whether the condemnation proceedings were valid or void, so far as other parties are concerned, we think, as between the city and the plaintiff, the award of the commissioners of appraisal should be held to be legal, and, assuming that the 24th day of February, 1914, was the time when the condemnation proceedings should have been finally determined, 30 days from that date the plaintiff would have been entitled to her money under the contract. As the board of education has been in possession of the plaintiff's property since about the 18th day of August, 1913, we think she should be awarded a judgment for $4,500, less the award of $350 to the Finestones; that is, $4,150, with interest thereon from March 26, 1914. The judgment appealed from should be reversed, with costs, and findings disapproved, and additional findings made, and judgment directed for the plaintiff in accordance with this opinion, with costs. All concur.

Judgment reversed, with costs, and judgment directed in favor of the plaintiff, with costs, in accordance with the opinion by DE ANGELIS, J. Order to be settled before Mr. Justice DE ANGELIS on two days' notice, at which time findings to be disapproved, and proposed additional findings to be made, may be submitted for settlement. All concur.

---

(173 App. Div. 814)

### NEW YORK COUNTY NAT. BANK v. HERMAN.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. EVIDENCE ☞581—TESTIMONY ON FORMER TRIAL—STATUTE—SHOWING OF COMPLIANCE.

No mere hearsay statement of counsel can furnish basis for the trial court's determination that evidence on former trial is admissible, under Code Civ. Proc. § 830, regulating the admission of evidence given by a party or witness upon former trial; but the party offering the prior testimony must produce evidence that the requirements of the section have been complied with, which must be incorporated in the record.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2414–2418; Dec. Dig. ☞581.]

2. EVIDENCE ☞555—EXPERT OPINION.

In an action by a bank against the contractor for its building, to recover damages suffered by reason of his misrepresentations as to the cost

of the building, testimony of defendant's experts, who, in arriving at their estimate of value, were influenced by and took into consideration oral explanations made to them by defendant, in amplification or explanation of the written statement upon which alone their opinions were supposed to be based, was inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2376; Dec. Dig. ☞555.]

3. EVIDENCE ☞60—PRESUMPTION OF INNOCENCE—MISREPRESENTATIONS.

In an action by a bank against the contractor for its building, to recover damages suffered by his misrepresentations as to its cost, the presumption of innocence, which is not indulged in civil cases, had no relation to the issue.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 81; Dec. Dig. ☞60.]

Appeal from Trial Term, New York County.

Action by the New York County National Bank against James S. Herman. From a judgment for defendant, and an order denying its motion to set aside the verdict for defendant, plaintiff appeals. Judgment and order appealed from reversed, and new trial ordered.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

L. Laflin Kellogg, of New York City, for appellant.
Richard T. Greene, of New York City, for respondent.

DOWLING, J. This action was brought to recover the sum of $75,000 damages claimed to have been suffered by plaintiff by reason of misrepresentations made by defendant as to the cost of labor, material, and superintendence furnished in the erection and completion of a bank building for plaintiff at Fourteenth street and Eighth avenue in the city of New York, which defendant had agreed to erect pursuant to the terms of a written agreement with plaintiff, whereby he was to be repaid the full amount of the moneys expended by him, plus a building profit of 5 per centum on such amount. Defendant's alleged false representations consisted in his statements to plaintiff that the amount expended by him, including his commissions, aggregated $350,718.93, whereas in fact it did not exceed the sum of $275,000. Upon this issue the jury found in favor of defendant, and we should not feel called upon to disturb that conclusion, save for reversible errors committed upon the trial. This view of the case renders unnecessary a review of the testimony, except as it is relevant to the errors in question.

The first of these was in the admission in evidence of the testimony given upon the former trial of this action by Maude E. Ebright, a witness called on behalf of the defendant. She was his bookkeeper during the time of the transactions in question, and her testimony, on direct and cross examination, covers some 25 pages of the printed record. Between the time of the two trials defendant claimed to have found hundreds of checks which he had previously testified were destroyed. When defendant's counsel sought to read her testimony, the following colloquy took place:

"Mr. Green: I offer now to read the testimony given at the last trial of this action by Maude E. Ebright, who was called as a witness on behalf of the defendant, and duly sworn. This offer is made under section 830 of the Code of Civil Procedure. I state that we have made effort to get the witness in the state, and that she is a resident of Xenia, Ohio, and we have been unable to procure her attendance at this trial.

"Mr. Kellogg: I object to the testimony as incompetent, under section 830, and as injurious to the rights of the plaintiff, who desires particularly to examine this witness, she being a bookkeeper, upon the questions of the checks in the Phillip Herman account, of which she kept a record, and as to which, on the testimony taken before trial of the defendant, and the testimony of the defendant taken at the trial, the defendant swore he had destroyed, and they being destroyed, and not being accessible at the moment she was examined, I had no opportunity to examine about it. Further, on the ground that there is no competent proof that she lived in Xenia, Ohio, or proof that proper effort had been made to get her here. It would have been competent to have taken her testimony by open commission, where she could have been examined in relation to the new facts developed by the finding of these checks, and I claim that it is not competent under section 830 of the Code as it now stands. (Objection overruled; exception.)"

Upon the former trial the witness testified as follows:

"Q. Where do you live? A. Xenia, Ohio. "Q. For some time past, where have you been in that city? A. 2 Bank street, City. Q. You were there on account of the illness of your aunt? A. Yes. Q. You came here at my request for the purpose of testifying on this trial, did you not? A. Yes."

[1] Section 830, Code of Civil Procedure, under which this testimony was sought to be read, is applicable "where a party or witness has died or become insane or being a nonresident of this state, has departed from the state since or during the trial of an action," and provides for the receipt in evidence upon a new trial of the evidence given by such party or witness given upon the former trial. But it is apparent that, to satisfy the court that the provisions of the section are applicable and that the former evidence is admissible, the party offering the prior testimony must produce proof that the requirements of the section have been complied with, and it must be incorporated in the record, so that, in case of an appeal, the appellate courts may be in a position to see upon what state of facts the admissibility of the evidence was determined. No mere hearsay statement of counsel can furnish a basis of such determination, and that is all that is present here. In fact, there is not even proof that the witness was a nonresident, for upon the former trial she claimed to be a resident of New York City, only temporarily sojourning in Ohio. Defendant's counsel now seeks to support the ruling by setting forth in his brief certain letters and a telegram to his client, which he says "were exhibited to the trial judge and satisfied him as to Miss Ebright's nonresidence"; but they are not included in the record on appeal, and there is no reference to them therein, nor even a hint that they were before the trial court. An examination of the testimony thus improperly received shows that it was of sufficient materiality for the ruling to constitute reversible error.

Further, error was committed in refusing to strike out certain testimony by the experts, Rufus H. Brown and Hugh Getty, called on behalf of the defendant, and permitting the jury to consider the same.

Of the total amount expended by defendant on the building in question, as shown in Plaintiff's Exhibit A26½, claimed to have been part of defendant's representations to plaintiff, the sum of $42,000 was entered as "labor," representing work done under defendant's supervision for labor, and not represented by contract with other parties, nor by incidental bills. These items were set forth in an exhibit some 28 pages in length (Defendant's Exhibit 87), but of necessity it was somewhat general in its character, and in many cases lacked details of the character and extent of the labor and the size of the area embraced in the work. Plaintiff had introduced the evidence of an expert, who testified that the reasonable value of the work was $24,613, a discrepancy of over $17,000. Defendant called an expert Frederick G. Murray, who, after an examination of the plans and specifications, prepared estimates of the quantities of the materials used in the work, which was received in evidence as Defendant's Exhibit 86. Based on the two exhibits the testimony of both Getty and Brown agreed that the value of the labor in question was $41,912.12, or substantially as defendant claimed it to be ($42,000). But upon cross-examination of the witness Getty it appeared that, when he and Brown made up their estimates of values, defendant was present "to explain," and, further, referring to the transactions of the witness with defendant:

"Q. And there you asked him for a detailed statement? A. Yes, sir. Q. And he said he had none, but he would make one up? A. We told him to make it; told him to make it up in detail, so that we could understand it from the plans and specifications, together with the details. Q. And he said he would make it up? A. Said he would. Q. And then he came back some time within the month with this statement? A. Yes, sir. Q. Just prepared as it is here? A. Just prepared as it is there. Q. And then he explained it, did he not? A. He did; because we questioned him on the whole thing. Q. Questioned him on the whole thing? A. Yes, sir. Q. From the beginning to the end? A. Yes, sir. Q. And of course you acted partially on his statement? A. We certainly did, together with the plans and specifications. Q. Certainly did? A. Together with the plans and specifications. I want to tell you the whole truth."

Getty also testified on redirect examination:

"Q. After the first explanation, you and Mr. Brown sat there and went over it two or three times together yourselves? A. He [referring to defendant] was twice with us, and we sent for him one time to explain things to us more fully, and he came and explained it, and there was some contracts that he did not have, and we required to see them, and he brought them up, but he was at no time with us when we made any figures. Q. What were the contracts, the extras? A. Some extras, and I think one or two—I do not remember what they were—they were written. An estimate on paper and a letter of acceptance, under it. There were two or three of them, and we required to see them."

[2] The testimony of Brown is not so clear on this point, as when he referred to "Herman's statement," on which he based his estimate in part, he may as well have referred to the written statement in evidence as to any oral one. But Getty's testimony leaves no room for doubt that, in arriving at their estimate of value, both he and Brown were influenced by, and took into consideration, further explanations

made to them by defendant, in amplification or explanation of the written statements, upon which alone their opinions were supposed to be based. To allow them to testify to their opinions formed on matters not in evidence, nor embraced in the question put to them as to values, was error, and the motion to strike out their evidence, based in part on an undisclosed communication from the defendant upon the vital question of the work done, should have been granted. Defendant moved to strike out the testimony of each of these witnesses separately, on the ground that his testimony was based in part on statements or representations made to him by defendant before witness arrived at a decision. As to Getty, there can.be no question that by his own admissions his testimony should have been stricken out. As to Brown, the evidence of Getty, without any contradiction of it by Brown, required the same course to be followed. The denial of each motion therefore constituted reversible error.

[3] Finally, the court charged the jury, at the request of defendant's counsel, as follows:

"The tenth I will charge: The presumption of law, if any, is in favor of defendant's innocence. If the jury believe that the evidence is capable of an interpretation which makes it equally consistent with innocence as with guilt, that interpretation must be attributed to it which accords with innocence, and in that event the verdict must be for the defendant."

It is now contended that the words "if any," thus used, qualified the instruction, so that it did not mean that there was a presumption of law in favor of defendant's innocence, and that this portion of the charge would otherwise be in conflict with the rest of it. But defendant requested the charge in this form, and must have expected to profit by its application. If there was no presumption of law applicable to the case, it was error to charge or to suggest its existence in any form. In fact, the "presumption of innocence" had no relation to the issue. As was said in Kurz v. Doerr, 180 N. Y. at page 91, 72 N. E. at page 927, 105 Am. St. Rep. 716, 2 Ann. Cas. 71:

"The presumption of innocence is not indulged in a civil action, as the plaintiff rests only under the burden of proving his case by a preponderance of evidence. * * *"

And at page 92 of 180 N. Y., at page 927 of 72 N. E. (105 Am. St. Rep. 716, 2 Ann. Cas. 71):

"We deem it very important that the strict rule of evidence applicable to the burden of proof in criminal cases should not be extended to civil actions for the recovery of damages, where the defendant is charged, incidentally, with arson, embezzlement, larceny, or any other crime. When life or liberty is involved, the proof must exclude reasonable doubt, but in a civil action, where a recovery of damages is sought against the wrongdoer, the plaintiff is only required to sustain his case by a preponderance of evidence."

The judgment and order appealed from will be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.